LAMBERT, D., JUDGE:
Larry Harms and his wife, Pamela Harms, appeal from a judgment entered by the Clay Circuit Court which reformed a mortgage and deed based on the equitable principle of mutual mistake. In this appeal, the Harmses argue that the unjust enrichment claim asserted by Chase Home Finance, Inc. ("Chase"), was time-barred, and, even if not so precluded, the trial court exceeded its authority in reforming the deed in addition to the mortgage. Having reviewed the record, we conclude that the trial court did not err in ordering the reformation of the deed and mortgage, or in entering judgment against the Harmses for unjust enrichment. Therefore, we affirm.
I. FACTUAL AND PROCEDURAL HISTORY
In 1998, the Harmses entered into a contract whereby they would purchase the 4.92-acre subject property from subdivision developer, Triple S Development, Inc. ("Triple S"), on an installment plan. Upon receipt of the initial down payment of $6,250, Triple S would convey a landlocked one-acre portion of the property, on which a residence stands,[1] to the Harmses. This conveyance was duly recorded in the Clay County Clerk's Office. Upon payment of the remaining purchase price ($24,500), *518 Triple S was to convey the remaining 3.92 acres to the Harmses. The Harmses made the initial payment in April of 1999, and Triple S conveyed the house lot to them, with an easement across the remainder for access. The Harmses remitted $24,500 by April of 2001, and at that time, Triple S conveyed the remaining acreage to the Harmses per the contract.
The dispute at the core of this appeal originated in the second deed from Triple S to the Harmses. The second deed included an acknowledgment of the first conveyance, and explicitly stated that the property subject to the prior conveyance was not part of the second conveyance: "There is excepted from this conveyance that tract of land previously conveyed to Larry and Pam Harms of record in Deed Book 249 at Page 160[.]" This second deed was also duly recorded in the Clay County Clerk's Office.
In 2002, the Harmses sold their property-ostensibly both lots-to Richard and Karen Cheek for $250,000. In discovery, the parties to this conveyance indicated they had intended the transaction to include the entirety of the real property the Harmses had purchased from Triple S. Larry Harms himself testified in deposition that the intent of the transaction was "selling the house" and all of his property located "up there on the hill and house included." The sales contract between the parties included not only both the residence and the surrounding acreage as the subject matter of the transaction, but also included a refrigerator and stove located within the residence.
The Cheeks obtained financing for the transaction through Century 21 Mortgage ("Century 21"). Century 21 retained the services of a law firm to perform a title examination, which failed to notice that the conveyance only included 3.92 of the total 4.92 acres. Century 21 assigned its mortgage to JPMorgan Chase Bank, N.A., which assigned it to Chase in December of 2008. The mortgage and the subsequent assignments thereof were also duly recorded.
Eventually, the Cheeks encountered financial difficulties and defaulted on their loan. Chase initiated this foreclosure action. The trial court granted judgment in favor of Chase, and ordered the property sold. Ethel Smith purchased the property at the judicial sale for $206,000 on June 4, 2010. Smith discovered the discrepancy in the deed soon after, and successfully moved the trial court to postpone distribution of the sale proceeds. The sale was not confirmed at that time, and following motions by both the Master Commissioner and Smith herself, the trial court ordered the proceeds returned to Smith on August 30, 2010.
Chase contacted the Harmses about correcting the mistake to allow Smith to take clear title to the house lot. The Harmses refused to do so, insisted they still owned the property, and demanded payment for their interest. With leave of the trial court, Chase amended its complaint in 2011 to seek reformation of the mortgage and deed, and to assert a claim of unjust enrichment against the Harmses. Smith intervened in the action in 2012.
Chase and the Harmses filed competing motions for summary judgment, and the trial court granted Chase's motion. The trial court concluded that Chase's unjust enrichment claim was not time-barred. The trial court also found the mortgage to have contained a mutual mistake. It ordered the mortgage and deed be reformed to match the clear intent of the Harmses and the Cheeks in their 2002 transaction. The trial court also confirmed the sale, ordering Smith to remit the bid price to the Master Commissioner, and the Master Commissioner *519 to execute a deed conveying both lots to Smith upon such payment.
This appeal followed.
II. ANALYSIS
A. STANDARD OF REVIEW
Summary judgment is appropriate when the record presents no unresolved issues of material fact. Steelvest, Inc. v. Scansteel Serv. Ctr., Inc. , 807 S.W.2d 476, 480 (Ky. 1991). The trial court's inquiry is limited to the legal question of the existence or non-existence of a dispute as to material facts of the case. Davis v. Scott , 320 S.W.3d 87, 90 (Ky. 2010) (citing 3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metro. Sewer Dist. , 174 S.W.3d 440 (Ky. 2005) ). The applicable standard of appellate review for issues of law, including statutory interpretation, is de novo. Wheeler & Clevenger Oil Co., Inc. v. Washburn , 127 S.W.3d 609, 612 (Ky. 2004).
B. THE APPLICABLE STATUTE OF LIMITATIONS IS TEN YEARS
The Harmses contend that the applicable statute of limitations to this action is found in Kentucky Revised Statute (KRS) 413.120. According to the Harmses, as an "injury to the rights of the plaintiff, not arising on contract and otherwise enumerated[,]" the action was subject to a five-year limitations period, which lapsed in 2007. KRS 413.120(6). They also cite Martin v. Wagers , 310 Ky. 363, 220 S.W.2d 580 (Ky. 1949), in arguing in favor of a five-year limitations period. "Assuming, without deciding, that appellee would have a period of five years after the discovery of the mistake to bring this suit, she must have alleged and proved that she did not and could not have discovered it by the exercise of reasonable diligence." Id. at 365-66, 220 S.W.2d 580 (citing Woods v. James , 87 Ky. 511, 9 S.W. 513 (1888) ) ; Forman v. Gault , 236 Ky. 213, 32 S.W.2d 977 (1930). Martin goes on to state that "due diligence requires that fraud or mistake be discovered at least within five years from the date of the recording of a deed." Id. (citing Elkhorn Coal Corp. v. Hite , 225 Ky. 735, 9 S.W.2d 1083 (1928) ).
The Harmses' position, however, is at odds with other statutory provisions and more recent decisions of Kentucky appellate courts. Chase alleged the deed contained a mistake. The provision of KRS 413.120(11) grants a five-year period for actions "on the ground of fraud or mistake." KRS 413.130(3) contains an exception that extends the five-year limitations period of KRS 413.120 to ten years when the claim is based on fraud or mistake:
In an action for relief or damages for fraud or mistake, referred to in subsection (11) of KRS 413.120, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake. However, the action shall be commenced within ten (10) years after the time of making the contract or the perpetration of the fraud.
In Hamblin v. Johnson , 254 S.W.2d 76 (Ky. 1952), a landowner sought to reform a deed to correct the boundary line dividing her property from an adjoining neighbor where they both had received their respective properties as partitions from a tract owned by a grantor who was a relative in common. The party opposing the reformation attempted to rely on the five-year statute of limitations of KRS 413.120. However, the Court held that "[t]he rule is that limitation does not run where a grantee under a deed, which by mutual mistake does not describe the property granted, has been in possession of the land." Id. at 77 (citing Carr v. Burris , 148 Ky. 232, 146 S.W. 424 (1912) ).
Subsequent decisions clarified that where a deed contains a mistake, the ten-year period applies, but the statute may *520 only be tolled only in instances where the parties to the conveyance have a fiduciary relationship. See Lemaster v. Caudill , 328 S.W.2d 276 (Ky. 1959) ; Skaggs v. Vaughn , 550 S.W.2d 574 (Ky. App. 1977).
While we do not read KRS 413.120 as being tolled, we do, based on these authorities, hold that the ten-year limitations period applies.
The Harmses do not controvert the mistake, but instead rely on the five-year limitations period to preclude Chase's claims. The mistake was made in 2002, discovered by Smith in 2010, and the amended complaint was filed in 2011. The applicable statute of limitations being ten years, per KRS 413.130(3), the claim was not precluded here, and the trial court correctly so held.
C. THE TRIAL COURT CORRECTLY FOUND THE OMISSION OF THE HOUSE LOT FROM THE CONVEYANCE FROM THE HARMSES TO THE CHEEKS RESULTED FROM MUTUAL MISTAKE
Mutual mistake has three basic elements. The party asserting mutual mistake must show: 1) the mistake was in fact mutual, not unilateral; 2) the mistake was shown by clear and convincing evidence; and 3) the parties had actually agreed to terms other than those expressed in the written instrument. Nichols v. Zurich American Ins. Co. , 423 S.W.3d 698, 702-03 (Ky. 2014).
It was undisputed below that the parties of the Harms-Cheek transaction believed the entirety of the property to have been conveyed. The parties acknowledged their intent in deposition testimony. The sales contract reflects an unambiguous intent by the Harmses to convey, and the Cheeks to receive, the house and the surrounding realty. The parties' behavior following the closing indicates a belief by both sides that the Cheeks now owned the property: the Harmses moved out of the residence, the Harmses surrendered their keys to the Cheeks, and after the closing, the Harmses stopped paying property taxes, utility bills, and maintenance costs. Most importantly, the Harmses expressed no indication that they believed they owned the property until after the foreclosure sale. On appeal, the Harmses do not contest the facts of the alleged mistake; instead they argue that Chase had no right to assert it due to a lapsed period of limitations under KRS 413.120(6).
There being no dispute regarding the mutual mistake of the parties as to the property conveyed, we conclude that the trial court properly issued that finding of fact.
C. THE TRIAL COURT DID HAVE THE AUTHORITY TO REFORM BOTH THE MORTGAGE AND THE DEED
It has long been the law in Kentucky that deeds may be reformed to reflect the intentions of the parties thereto when it is shown that mutual mistake frustrated those intentions. "That courts for a mistake of the scrivener or through mutual mistake of the parties will reform deeds so as to eliminate property not intended to be conveyed or to include property which was omitted but intended to be conveyed, is thoroughly settled[.]" Whitt v. Proctor , 305 Ky. 454, 456, 204 S.W.2d 582, 583 (1947). See also Schroath v. Pioneer Bldg. Ass'n of Newport , 274 Ky. 685, 119 S.W.2d 1113 (1938) ; First Nat'l Bank v. Robinson , 253 Ky. 781, 70 S.W.2d 674 (1934).
This Court having already determined that the evidence of the mutual mistake was sufficient, we must likewise conclude that the appropriate remedy is to reform both documents to match the parties' intentions.
*521 D. THE TRIAL COURT PROPERLY ENTERED JUDGMENT AS TO THE UNJUST ENRICHMENT CLAIM
The three elements of unjust enrichment are set out in Jones v. Sparks , 297 S.W.3d 73, 78 (Ky. App. 2009). First, a benefit must have been conferred upon the defendant to the detriment of the plaintiff. Second, the defendant must appreciate the benefit. Finally, the defendant must retain the benefit without making payment for its value.
Chase takes the position that the elements are met in that the Harmses retained a benefit (the proceeds of the Cheeks' original mortgage loan) for which the Harmses otherwise had no intention of paying. Chase further argues that the retention of this benefit comes at Chase's expense because its mortgage no longer covers the property, and substantially affects its ability to receive payment.
The trial court found that the Harmses were attempting to retain both the benefit and the subject property. Further, the Harmses made no effort to either repay the money to Chase, or to convey the property to Smith, as the purchaser. The Harmses have, at no point, disputed the facts of these allegations.
After reviewing the record, we agree with the trial court that it contains no evidence establishing a genuine factual dispute as to the elements of unjust enrichment.
III. CONCLUSION
The trial court correctly found the record contained no dispute as to the mutual mistake of the parties to the Harms-Cheek transaction. The trial court applied the correct statute of limitations to the dispute. Under the authorities cited herein, the trial court was entitled to order the reformation of the deed and the mortgage at issue in this matter. Likewise, the record contained no evidence disputing satisfaction of the elements of unjust enrichment. Thus, we affirm the judgment of the Clay Circuit Court.
ALL CONCUR.

For the sake of simplicity, this Court will refer to this parcel as the "house lot."